TuRley, J.
delivered the opinion of the court.
The complainants purchased from Richard Netherland, his mills and mill seat ou the lower end of the Long Island oí Holston, including the dam and land on which the abutment and forebay stood, with privileges of water and all the rights and appertenances thereto belonging, for the sum of twenty-jive hundred dollars, which was conveyed to them by a deed with general warranty on the 19th day of October, 1836. Benjamin Cloud the defendant, was the legal owner of the southern and opposite bank of the stream upon which one of the abutments of the dam rested. This dam had been built by Richard Netherland, the senior, father of the vendee, and for many years he had remained in the peaceable possession thereof, and during the whole time without hindrance or molestation from said Benjamin Cloud or any other person. Shortly after the purchase by complainant, Cloud set up his claim to the land upon which the southern abutment of the dam rested, and evinced a disposition to claim his interest in the use of the water power, upon ascertaining which complainants refused to pay a portion of the purchase money till the question of right was settled. Netherland and Cloud then referred the matter to arbitrators, who awarded that Cloud should convey his title to the land on which the southern abutment stood, and that Netherland should pay him five hundred dollars. In pursuance of this, Cloud on the 13th day of October, 1836, executed his deed of bargain and sale, by which he conveyed to the complainants, for the consideration of five hundred dollars, the ground on which the abutment on the south side of the stream stood, being the same to which the dam crossing the stream was attached, with all and singular, the rights and appertenances thereto belonging. The complainants purchased the property for the purpose of erecting machinery for spinning and weaving cotton, and have expended much money in doing so, and state that they design to spend much more ' in enlarging the same. After the contract was thus executed by Netherland and Cloud he (Cloud,) again evinced a desire to use the water power accumulated by said dam for his own ' benefit by the erection of *183 a saw mill on his own land to be supplied with water from the dam; before doing so, he spoke to complainants about his intention, who told him he could use water from their dam, provided that in doing so, he did not obstruct them in the exercise of their privileges, and did not diminish or draw off the water so as to effect the operation of their mills and factory, or' any other machinery they might erect, or lessen the amount necessary to keep them in successful operation. Cloud erected a saw mill some sixty or eighty yards below the dam of complainant, united it to the dam by a forebay and proceeded to use the water in turning the same, and that so largely as at frequent times to impede and delay the operations of the machinery of complainants; upon remonstrance, no relief was obtained; defendant setting up his legal right to the free use of the water, denying that he had parted from it by his deed of 13th October, 1836, and that if he had not the right to use it through the dam of complainants, he had through a race to be cut above the dam on his own land. To obviate the evils experienced by the acts of defendant and .those contemplated from his asserted claims to an enjoyment of the water privilege, this bill is filed to enjoin him perpetually from using said Water except under the permission of the complainants, and from diverting the stream from its natural channel or any other manner appropriating the same to the prejudice of their rights. In order to determine what relief complainants are entitled to, we must ascertain, what rights they acquired by the deeds of bargain and sale from Netherland and Cloud; we have seen that Netherland sold all his interest in the mill site and water privilege on the island on the northern bank of the stream: there is no controversy with him, he sets up no claim whatever to any enjoyment therein. But not so with Cloud: he contends that his sale of the site of the southern abutment of the dam with its apper-tenances divested him of no right which he had before in the water in the stream, that he still owns the land on his bank of the river to the centre of the stream, and owning the land is entitled to the use of the water which covers it. This makes it necessary to give a legal construction to his deed. It is a principle of law well settled, that every thing necessary to the full en *184 joyment of a right passes with a purchase of the right; for example if one sells a part of his land in the centre of his tract, a right of way through passes with the purchase; if one sell a crop upon his ground, a right of entry to gather the same is purchased with the crop. So if a place for an abutment of a dam is sold, the right to use the water collected by the dam, passes with the land, for otherwise, the very object for which it was purchased is defeated. A grant of a mill and appertenances (even without mentioning land) carries the whole right of water enjoyed by the grantor as necessary to its use, and as a necessary incident. Ang. on water courses 39,1 Ser. & Raw. Rep. 169, 5 ib 107. So by the sale of a mill the water of the race will pass, though the land through which the race is cut and by which the water passes to the mill, is not included in the land sold. Westmore vs. Whyte, 2 Cain’s Cas. 87: Strickler vs. Todd, 10 Serg. & Raw. 63: New Ipswich Woollen factory vs. Batchelden, 3 N. H. Rep. 190. Ang. on water courses 40. When a right is granted by a riparian owner to abut a mill dam on his shore, the grantee has prima facie a right to all the water power created by the erection; and the burden of proof is upon the grantor to shew that the grant was made with limitation, or restrictions respecting the use of the water. Bliss vs. Rice, 17 Pick. Rep. 23. Ang. on water courses 44. It is obvious then that the defendant Cloud, by his deed of the 13th October, 1836, conveyed to the complainants, not only the ground upon which the southern abutment of the dam stood, but also the right to the entire and exclusive use of all the water power created by the erection of the dam, it being necessary to the enjoyment of the property purchased, and ap-pertenant thereto. It is true as argued, that a grant of a water course will not pass the soil over which it flows, the legal title still remaining in the grantor; yet in such grants a sufficient interest in the soil is passed, to enable the grantee to enjoy his grant. This principle is common to the civil and common law. Ang. on water courses 43. In the case of Nichols vs. Chamberlin, Cro. Ja. 121, it was held by the court of king’s bench, “that if the owner of a house builds a conduit thereto, through his other land and conveys the water by pipes to his house, and *185 then sells the house with all the appertenances, excepting the land; conduit and pipes pass, together with a right to dig and open the earth for tire purpose of repairing the pipes and laying new ones if necessary.” The argument then that defendant is still the legal owner of all the land on his bank of the stream, as well that covered by the water as that which is not, except the place of the abutment, though true, amounts to nothing; for by the sale of the abutment he parted from the use of the water power raised thereby, and the purchaser has acquired such interest in his land covered by the water, as will enable him to secure its enjoyment. What is the consequence of this view of the case? That the defendant has no right to use the water raised by the dam without the consent of complainants, either through the dam or by a race cut from the pond created by it though it be upon his own land, for he can have no more right to take the water from one end of the pond than the other; (the consequence being the same in either case) in as much as he has for a valuable consideration sold his right to all the water power created by the dam at the height it was erected at the time he sold the southern abutment. If his land extended up the stream beyond the point at which the water is backed by complainants dam, we see nothing to prevent his use of the water at that point subject to the same restrictions the law places upon all persons in the usé of water courses when their rights come in conflict with those of others.
But it is contended, that a court of chancery has no power to interfere by injunction in this case, till the rights of the parties have been settled at lawn We do not concur in this view of the case.
Mr. Story in his commentaries on equity,'sec. 926, 927, says when the injury is irreparable, as where loss of health, loss of trade, destruction of the 'means of subsistence, or any permanent ruin to property may or will ensue from a wrongful act or eviction, courts of equity will interfere by injunction, in the furtherance of justice and the violated rights of the party. Thus for example, when a party builds so near the house of another as to darken his windows, courts of equity will interfere by injunction to prevent the nuisance, as well as to remedy *186 it, if already done. In cases of a nature calling for a like remedy as the obstruction of water courses, the diversion of streams from mills &c., and in all cases of this sort, if the right be doubtful, the court will direct it to be tried at law, and will, in the mean time restrain all injurious proceedings, and when the right is fully established, a perpetual injunction will be decreed. If the right be doubtful, then it must be tried at law, otherwise not. We have no doubt about the rights of the parties to this controversy, and there is no necessity for a trial at law.
We are therefore of the opinion upon the whole view of the case, that the decree of the chancellor enjoining the defendant from using the head of water raised by the dam of the complainants except under the parole permission as stated in the decree, be affirmed.